1              IN THE UNITED STATES DISTRICT COURT

2                  FOR THE DISTRICT OF COLUMBIA

3    UNITED STATES OF AMERICA,         . Docket No. CR-08-259 (PLF)
                                       .
4          Plaintiff,                  .
                                       . Washington, D.C.
5             v.                       . September 2, 2008
                                       . 2:30 p.m.
6    VICTOR R. PAPAGNO,                .
                                       .
7          Defendant.                  .
     . . . . . . . . . . . . . . . . .

8                      TRANSCRIPT OF ARRAIGNMENT
9              BEFORE THE HONORABLE PAUL L. FRIEDMAN
                   UNITED STATES DISTRICT JUDGE
10

11   APPEARANCES:

12   For the Plaintiff:        United States Department of Justice
                               By: James A. Mitzelfeld, Esquire
13                             555 Fourth Street, Northwest
                               Washington, D.C. 20530
14                             202.514.7131

15   For the Defendant:        Venable, LLC
                               By: Thomas J. Kelly, Jr., Esquire
16                             575 7th Street, Northwest
                               Washington, D.C.20004
17                             202.344.4889

18   Court Reporter:           Linda L. Russo, RPR
                               Official Court Reporter
19                             Room 6403, U.S. Courthouse
                               Washington, D.C. 20001
20                             202.354.3244

21

22

23

24

25   Proceedings reported by machine shorthand, transcript produced
     by computer-aided transcription

1              P R O C E E D I N G S

2         THE CLERK:  Criminal 05-259, United States of America

3  versus Victor R. Papagno.  For the government, Mr. Mitzelfeld.

4  For the defendant Mr. Kelly.

5         THE COURT:  Good afternoon.  Good afternoon, Mr.

6  Papagno.

7         As I understand it, we're here first to arraign Mr.

8  Papagno, and presumably also we are in agreement on what the

9  bond situation ought to be, and also for a plea, although I

10  have some questions about the plea that I want to ask you.  So

11  you can fill out the forms Ms. Moon gave you if you want first,

12  and then we can go ahead with the arraignment.

13         Why don't we start this way.  Why don't we ask Mr.

14  Papagno to come forward with counsel, and then Ms. Moon can

15  arraign him.

16         Good afternoon, sir.

17         THE DEFENDANT:  Good afternoon, Your Honor.

18         THE CLERK:  Mr. Papagno, a one count Information has

19  been filed charging you with theft of government property, in

20  violation of 18 United States Code, Section 641.  Do you wish

21  to waive formal reading of the information?

22         THE DEFENDANT:  Yes.

23         THE COURT:  How do you wish to plead?

24         THE DEFENDANT:  Guilty.

25         THE COURT:  Well, he wants to plead guilty once I ask

1  him some questions, but for the moment why don't we enter a not

2  guilty plea because I have some questions about the plea

3  agreement.

4            MR. KELLY:   Very well, Your Honor.

5            THE COURT:  So he will waive reading of the

6  indictment, I assume?

7            MR. KELLY:  We do.

8            THE COURT:  And he is pleading not guilty for the

9  moment.

10            MR. KELLY:  That's correct, Your Honor.

11            THE COURT:  Now, Mr. Papagno, why don't you have a

12  seat.  I want to ask your counsel and the government some

13  questions.

14            My fundamental question is this.  If you can't agree

15  on the amount of loss, and if it's going to take hours, if not

16  days, of my time to hear evidence on the amount of loss and to

17  decide it, why don't we just let a jury decide it.  Why don't

18  we forget the plea, let's go to trial, the government can prove

19  the amount of loss beyond a reasonable doubt, which is its

20  obligation under Booker, you'll still get the two points

21  downward adjustment for acceptance of responsibility because

22  he's indicated today he's prepared to plead guilty.

23            But why should I sit here for days and listen to

24  experts and look at documents and sort it out, and have to

25  write an opinion.  All we have to do is try the case.  And

1    we'll have a series of questions for the jury and let the jury

2    figure out what the value is.  The difference between zero and

3    several millions of dollars is a lot.  It will take me much

4    longer than it will take a jury to decide it, and much longer

5    than it will take you to try it, and probably almost the same

6    amount of time to try it as it will to have a hearing on the

7    amount of loss.  Tell me where I'm wrong.

8              MR. KELLY:  Your Honor, I guess I'll go first.  The

9    only issue in this whole matter really is the amount.

10             THE COURT:  It's a big issue.

11             MR. KELLY:  Of course, yes, it is.  We collectively,

12   my client and myself and the government, have worked through

13   this.  We have cooperated.  The only issue really is the

14   evaluation of the amount of the loss.

15             The problem is, is that the computer equipment that

16   was taken from the Naval Research Lab, some of it was obsolete,

17   and really it's a matter of what is the true value of that.

18   The government has put in the purchase price of that equipment,

19   but a lot of the equipment had already been used.  Some of it

20   was brand new, but the majority of it was used.

21             So we thought that with testimony before the Court, I

22   don't know that it's going to take days, I don't think it will,

23   that -- I'd rather have you evaluating that testimony than the

24   jury.  I'd rather not gamble with the jury.

25             THE COURT:  What am I going to do?  I'm going to

1    listen to two experts?

2            MR. KELLY:  You're probably going to listen to how

3    the government came up with its evaluation, and it's going to

4    be up to us to come up, and to contradict that, give you a

5    range of what the value of that is.

6            THE COURT:  How are we going to do that?  How are you

7    going to present your evidence?

8            MR. MITZELFELD:  Thank you, Your Honor.  First of

9    all, I just want to mention for the record that I think both

10   parties agree that the elements of the offense are stipulated

11   to in terms of the actual offense.  Did he steal these items

12   during this period of time in the District of Columbia?  And

13   the answer is yes.

14           MR. KELLY:  Correct.

15           MR. MITZELFELD:  What the government proposes to do

16   is put on evidence, perhaps one, three witnesses, among those

17   would be the auditors, perhaps one auditor, one agent.  We have

18   a spreadsheet that I'm prepared to introduce that lists all the

19   items that were taken.  Again, I don't think there's any

20   dispute over what was taken.

21           And then at that point it seems to me much of the

22   decision will ultimately be a legal ruling on how do you

23   evaluate the loss in this case.

24           THE COURT:  That's a question of law?  Is there case

25   law on that?

1          MR. KELLY:  No.  It's a question of fact.

2          MR. MITZELFELD:  When I'm talking about law, I'm

3    talking about what measure is the fraud loss.  Do you use the

4    intended loss, do you use the retail value, that sort of thing.

5    Obviously, you'll have to make a fact-finding decision about

6    what the actual loss amount is.  I'm just saying there's some

7    legal parameters, I think.

8          THE COURT:  Do you both agree as to what the

9    government's burden of proof is?

10          MR. KELLY:  Yes, Your Honor.

11          THE COURT:  What is it?

12          MR. KELLY:  Beyond a reasonable doubt as to the

13    evaluation.

14          THE COURT:  Do you agree with that?

15          MR. MITZELFELD:  No.

16          THE COURT:  I didn't think so.

17          MR. MITZELFELD:  I think there's no question at

18    sentencing --

19          THE COURT:  So why don't we have a trial where it

20    would be beyond a reasonable doubt.  In other words, if we had

21    a trial you could stipulate to all the facts, the government

22    would have to prove loss to a jury beyond a reasonable doubt,

23    and the jury would decide.  We'd ask them questions.  They'd

24    hear all the experts.  They'd look at all the documents.

25          If it's a sentencing question, you're waiving your

1    right to proof beyond a reasonable doubt probably, I'm not sure

2    whether the plea agreement says that, or maybe that's an issue

3    that's going to have to be briefed before we get there, whether

4    it's proof beyond a reasonable doubt or proof by a

5    preponderance.

6          Under the Sentencing Guidelines pre-Booker,

7    everything was preponderance.  Post-Booker, usually there is an

8    explicit or implicit agreement that you're giving up your right

9    to a trial, and that doesn't just mean the right to a jury.  It

10   means the right to proof beyond a reasonable doubt as well.

11         So, for example, I still have the power so long as

12   I'm below the statutory maximum at a sentencing hearing to

13   decide whether somebody is an organizer or leader, or had a

14   minimal role, or whether there was an abuse of trust.  And I do

15   that by a preponderance of the evidence even though those are

16   facts.

17         Now, is there something about this plea agreement or

18   the amount of loss issue that argues that I should be doing it

19   beyond a reasonable doubt rather than by a preponderance

20   post-Booker?  That's a legal question.  And what I'm trying to

21   decide the amount of loss for is to determine the enhancements

22   under 2B1.1 of the sentencing guidelines.

23         But do I do that once you've plead and you've given

24   up your right to a jury trial, do I do that by a preponderance?

25   I think probably, but I'm open to argument.  Or do I do it

1    beyond a reasonable doubt?  If we have a trial as opposed to

2    just a sentencing hearing, there's no doubt that the government

3    has to prove it beyond a reasonable doubt.

4          MR. MITZELFELD:  The government's position would be

5    that the standard is preponderance of the evidence, and that

6    for the defendant to gain two or three levels for acceptance of

7    responsibility he would have to forego a trial.

8          The government's position is we would save a lot of

9    time and a lot of the Court's resources if we simply had a

10   hearing on the amount of the fraud loss.

11         THE COURT:  Well, it depends how you define

12   "resources."   My law clerk and I would have to do a lot more

13   work to actually decide the question of the amount of loss than

14   we would if there were a jury trial where everything was

15   stipulated except for the amount of loss, and the jury,

16   properly instructed and with a series of Interrogatories, would

17   be deciding the question.

18         On the other hand, I guess -- so I guess what I'm

19   trying to suggest is that it's more complicated than maybe

20   you've thought through.  And burden of proof is a significant

21   question because I think, and again if there's cases out there

22   that take a different view, I'm open to it, but I think if he

23   pleads guilty, he's giving up his right to have this proved

24   beyond a reasonable doubt.  That may or may not make a huge

25   difference in that case.

1          So the first question is, is there an argument that
2   it's still got to be proof beyond a reasonable doubt.  The
3   government is saying no, under the guidelines once he's plead
4   guilty it's a sentencing hearing, it's not a trial.  And
5   consistent with Booker, preponderance is all that he's entitled
6   to.  I think the government is probably right.  But, again, I'm
7   open to argument.
8          If that's right, then the question for Mr. Papagno
9   and for you is whether or not he wants to give that up.  Well,
10  how does he preserve that?  He preserves that by going to trial
11  instead of pleading.
12         Then there's the question of, I said it but I still
13  think this is probably an open question, does he get the two
14  level downward adjustment if he goes to trial sort of because I
15  have insisted on it after he's acknowledged his guilt and is
16  stipulating to all the facts except for the amount of loss.
17  Can I still give him the two level downward adjustment, and
18  should I?  Does the government have an argument that I
19  shouldn't if we have a trial?  They surely have an argument
20  that is probably irrefutable that he never gets the third point
21  if he goes to trial.  But I think the question of whether he
22  gets the two points is a question in circumstances unique like
23  this one.  We don't have to decide it today.
24         And then the other question is, tell me more either
25  now or at another point, as to what this hearing, if it's going

1    to be a hearing, is going to look like, and how I decide it.

2    I'm going to have a lot of exhibits which Mr. Mitzelfeld has

3    brought with him today, and I'm going to have one to three

4    witnesses on the prosecution side, and Mr. Mitzelfeld's view,

5    and then I decide by a preponderance of the evidence.  So how

6    do you persuade me otherwise?  Do you have any experts?  Are

7    you going to have experts?

8            MR. KELLY:  We will have probably two witnesses, one

9    would be of the expert nature, and one would be probably the

10   defendant himself.

11           MR. MITZELFELD:  If I could address that, Your Honor.

12   Because the defendant has stipulated, or is about to stipulate

13   if we proceed with the plea hearing, as to what was taken, and

14   it seems to me then, just getting back to the argument I made

15   perhaps inartfully earlier, if the government has a view as to

16   what the retail value of these items were when new, so it seems

17   like a large share of the ultimate decision by this Court will

18   rest on whether or not the government is able to persuade you

19   that you should use the retail value when new, as opposed to

20   some kind of reduced level.

21           We don't have to argue over what was taken, which it

22   seems to me would really eliminate the difficulty that you

23   would face.

24           Another possibility would be we both propose values

25   at the beginning of the hearing with some basis for why, and

1    then if you find certain facts you pick A, or you pick B.

2              THE COURT:  Do you anticipate either of you that the

3    experts -- there's a couple of questions.  One is, I suppose

4    whether retail value, is there some basis in accounting, or in

5    economics, or in whatever field of expertise, to say the retail

6    value is the right value?  Or is there some basis in the view

7    of experts that things depreciate, and is there some formula or

8    formulae that somebody, either as the government's primary

9    position or as its fall-back position, would argue it's not

10   just scrap value or whatever the term is that Mr. Kelly wants

11   to use, but there's some other number in between there that

12   works.

13             What I don't want to do, and again I'm suggesting one

14   possible way to do it is to have a jury trial, another possible

15   way to do it is for me to do it but with a sufficient amount of

16   guidance, and not just the two extreme positions.  I can't be

17   sitting here when it's all over saying, wait a minute, I don't

18   understand this; nobody's talked about depreciation, nobody's

19   talked about the way things really work in the marketplace, or

20   has demonstrated to me that that stuff is not relevant.

21             I don't want to be picking a number from the air.  On

22   the other hand, as I understand it, from the statement of the

23   offense there were 19,000 pieces of computer and office

24   equipment that were stolen.  Now, am I going to have to go

25   through item by item, or are your respective experts going to

1    sort of group them in some fashion.

2              MR. KELLY:  I think they're going to group them.  Our

3    fundamental problem with the evaluation provided by the

4    government, we believe that what they have done is, they've

5    split out the computers, they have taken the computers apart

6    and they're now counting them separately part by part, as

7    opposed to buying a computer off the shelf.

8              Also, a lot of the material that was taken from the

9    Naval Research Lab was out there for trash, literally trash.

10   The government's view is that the property there could have had

11   a still useful life ahead of it, and could have been used by

12   other agencies in the Federal government if they had some

13   value.

14             We're looking at it more from the point of view as if

15   you were buying your own computer, what is the value of that

16   computer three, four, five years after you've had it in

17   service.  There were some monitors that were brand new and they

18   weren't even open.  So the government would have an argument

19   there that that should be the purchase price of those items.

20             So that's the problem.  I don't think the number is

21   zero, but it certainly isn't 1.6 million, is our view.

22             MR. MITZELFELD:  If I can address that, Your Honor.

23   While I certainly have not had a chance to brief the argument,

24   I have briefed it in other sentencing cases.  It's the

25   government's position, this is why again we feel like the task

1 will not be quite as difficult as perhaps the Court is afraid

2 it will be, but if you look at the case law, the key question

3 under the guidelines is intended loss.  And so I think the real

4 factual question is not so much what is the equipment worth

5 today or the day that the search warrants were executed, but

6 rather what was its value when it was stolen?

7    And unfortunately for the government, the defendant

8 didn't keep records of when he took this equipment.  But we do

9 have some evidence that we believe we can bring in that will

10 show, or at least we would argue would lead a fact-finder to

11 believe that it was stolen over -- in a regular pattern over a

12 ten year period, and therefore it's perfectly acceptable from a

13 legal analysis to use the retail value.  Because if it was

14 stolen brand new ten years ago, just like if you robbed a bank

15 ten years ago and you'd get the money -- well, the bank is a

16 bad example.

17    THE COURT:  The bank is a bad example, because we

18 don't adjust for inflation or recession.

19    MR. MITZELFELD:  Absolutely.  But let's say you went

20 to a car dealership and you stole these cars and they no longer

21 have catalytic converters, so they're useless.  I think while

22 the defense might argue they have no value, I think the

23 government could argue in 1974 when they were stolen that's

24 what the value was, that was the intended loss under the

25 guidelines.

1          MR. KELLY:  They know the range of time Mr. Papagno

2   was employed, they know periodically over those ten years he

3   took items.  The only thing they know is that some of these

4   items were out for trash, so the Government intended to dispose

5   of them.  There's no way that the government can say if you

6   bought an Apple computer now, it was stolen and it should be

7   the fair market value.  There is absolutely no proof of the

8   price of the item that was stolen on either side.

9          THE COURT:  Let me ask you a couple of other

10  questions.

11          MR. MITZELFELD:  If I could just, I don't want to

12  give you -- I guess we have to give you a preview of the

13  arguments.  One of the, I think, the issues that the Court will

14  have to decide is, in the absence of records is it fair to --

15  whose side, where does the evidence take you in terms of the

16  decision that's made as to when the items were stolen.  The

17  evidence we will offer are things such as, we'll bring in

18  photographs showing the volume of items which was more than one

19  tractor trailer.  We will bring in evidence that a 2200 square

20  foot storage building was built strictly to house all these

21  items, and we know when it was built.

22          So, no, we can't say these three items were taken on

23  this day, but I think we can say this couldn't have been stolen

24  in the last year, there's no way he would have been able to fit

25  it all into his vehicle, if you will.  And we have witnesses

1    who can testify as to when they were aware of certain things

2    being taken.

3         So one possibility since the parties don't disagree

4    what the retail value would be, is, since I think it's a

5    central question, if both parties put on evidence as to when we

6    believe these items were stolen, possibly the Court could take

7    some ratio and say, okay, the audit showed 1.6 million, I'm

8    going to apply some kind of factor to that based on my own

9    determination as to when it appears these items were taken.

10   It's one possibility to avoid a line-by-line analysis.

11        THE COURT:  There's a couple of other thoughts.  As I

12   understand what you've said, the amount of loss leads you to

13   conclude that -- well, we start with a base offense level of

14   six, and assuming that he pleads and gets two levels for

15   acceptance of responsibility that means that the guideline

16   range would be somewhere between four, the offense level

17   between four and 20, depending upon the amount of loss.  The

18   difference is significant because if it were four, it's zero to

19   six months.  And if it were 20, it would be 33 to 41 months.

20        MR. MITZELFELD:  Correct.

21        THE COURT:  Now, I assume that you have talked about

22   the possibility of an 11(c)(1)(C) plea.  In other words, you

23   could, maybe that's a nonstarter if Mr. Kelly is going to argue

24   for probation and the government is going to argue for, in the

25   best of all possible worlds from your perspective, somewhere

1    between 33 and 41 months.

2            But it's also possible, and I'm just hypothesizing

3    and I don't want to get involved in plea discussions, that the

4    government would conclude that in view of Mr. Papagno's

5    background, and so forth and so on, that some period of time

6    less than that is fair and makes sense, given all the

7    sentencing factors, and that maybe there would be the

8    possibility of agreeing on a sentence, and then we wouldn't

9    have to go through this exercise.

10            If you all came in with an 11(c)(1)(C) plea and said

11    we agree to everything that's in this plea agreement, both

12    sides agree, and in addition we agree that an appropriate

13    sentence is X, and we all know, except probably Mr. Papagno who

14    is not a lawyer, how an 11(c)(1)(C) plea works, which is

15    basically I say to him at the time of the plea, you and the

16    government have agreed the appropriate sentence is X, and I

17    hereby commit you to that, that's the sentence I'll give you.

18    And if I change my mind, either side has the right to withdraw

19    from this plea.

20            That's a possibility, it may not be realistic in this

21    case but it may be, that I throw out on the table.

22            The other possibility is to not take the plea today,

23    but the first question I think is to either agree, or agree to

24    disagree, on what the burden of proof is.  And if you're going

25    to disagree, to brief the question because I don't want to take

the plea for Mr. Papagno if there's any question about the
standard of proof at the sentencing hearing.  That doesn't do
anybody any good because he needs to understand what he's
giving up.  And if he's giving up proof beyond a reasonable
doubt, he ought to understand clearly and up-front that he's
giving up proof beyond a reasonable doubt.

And Mr. Kelly needs to answer that question as a
matter of law.  And if you wind up thinking there's no argument
to the contrary, fine.  If you think there might be an
argument, we'll brief it.  Regardless, at the end of the day
you're going to have to fully advise Mr. Papagno what he's
giving up.

MR. KELLY:  I have not briefed that and I have not
looked at it closely enough.

THE COURT:  I understand.  And then while we're
putting things off a little bit to do that, both of you can
think about first the 11(c)(1)(C) possibility, and secondly in
a little more refined way what the sentencing hearing is going
to look like.  It sounds like neither of you like my suggestion
of a jury trial.

MR. KELLY:  Well, I don't know, the burden of proof
is --

THE COURT:  It might affect that.

MR. KELLY:  You were convincing me there for a while.
I don't know, frankly, what we'd do.  I thought it would save

1     everybody time and expense to move forward with a plea, and

2     then at sentencing contest the amount.

3          But as the Court has pointed out, there are a number

4     of issues that are left.  We have attempted to negotiate not an

5     11(c)(1)(C) plea, but to stipulate to the amount of the loss.

6     It's obvious that the government wants something.  The

7     guidelines don't help much.

8          THE COURT:  You could either agree on an amount of

9     loss, which would solve the problem and we'd know going forward

10    what the guideline sentencing range is.  And then, of course,

11    since they're advisory, we can deal with all those issues.  Or,

12    alternatively, agree on an appropriate sentence and just say we

13    don't have to decide the amount of loss because we have agreed

14    on an appropriate sentence.

15         If neither of those is possible, then we need to

16    think about what, in a more sophisticated refined way, what the

17    sentencing hearing is going look like so that I'm not left out

18    at sea, that whatever legal issues are fully briefed, however

19    you can package these things and what kinds of experts you

20    need, and so forth.

21         So my suggestion is that we come back on a date that

22    we will agree to for a status conference and/or plea, and you

23    explore these other questions in the meantime.

24         MR. KELLY:   Okay.

25         THE COURT:  I don't know how much time you need to

1    sort that out.  You need to think about the reasonable doubt.

2              MR. KELLY:  Correct, I need to brief that.

3              THE COURT:  You need to decide for yourself whether

4    there's an argument.

5              MR. KELLY:  I'm going to need at least two weeks.

6              MR. MITZELFELD:  Does the Court want us to brief it,

7    or only to brief it if the defendant feels like it's something

8    other than a preponderance of the evidence?

9              THE COURT:  I think if Mr. Kelly concludes after

10   doing all of the research that there's no basis to argue to the

11   contrary that it's clearly a preponderance, then he has to

12   decide whether they want a trial or plea.  And you can report

13   that back at a status conference.

14             If, on the other hand, he thinks there's a legal

15   argument to be made, then I guess the next question is

16   whether -- that I have to decide that question before the plea

17   or whether his client is prepared to go forward with the plea

18   regardless of what the standard is, because there are some

19   benefits to pleading guilty regardless.

20             So I guess what we should do is set a date for a

21   status conference.  And if before that date you've talked to

22   each other and think that more time is needed or that briefing

23   is required, you can then call Ms. Moon, we can cancel the

24   status conference, and can file something and say we think we

25   need to brief these issues, and here's the schedule we have

 1    agreed on, and we want to do that before the plea.

 2            MR. KELLY:  We'll explore all these things with the

 3    government, Your Honor.  I know the government has one concern,

 4    and that is Mr. Papagno is going through a contested divorce

 5    with his wife.  And we're prepared to put on the record that

 6    Mr. Papagno will stay away from his wife pending the divorce,

 7    with the exception of going to court, which he has to do

 8    tomorrow, and with the exception of picking up his children.

 9            The concern has been expressed there's a victim

10    witness assist in place for Mr. Papagno, and that I have

11    absolutely no indication -- I have met the children, he's a

12    very loving parent, I have not seen anything of a potential for

13    harm.

14            THE COURT:  Okay.  So we need to set conditions of

15    bond, and that will be one of the conditions.

16            MR. KELLY:  Correct.

17            MR. MITZELFELD:  That's correct.

18            THE COURT:  So let's do that.  Why don't you give Ms.

19    Moon the --

20            MR. KELLY:  We have been in Pretrial, although it's

21    been a while since I've been down here.

22            THE COURT:  Have you been down to Pretrial?

23            MR. KELLY:  Yes.  We were going to stop back.

24            THE COURT:  So we don't have anything in writing from

25    Pretrial?

```
 1            MR. KELLY:  Correct.

 2            THE COURT:  So why don't you give Ms. Moon name and

 3   address, you don't have to do this orally on record if you

 4   don't want to, name and address where he's going to be living,

 5   and phone number, employment, and you can fill out this form.

 6   Actually, why don't we do this.  Why don't we take about a five

 7   minute break, why don't you and Mr. Papagno fill out the form

 8   with Ms. Moon, the condition that you want.  Let's think of the

 9   exact language we want to put in there, agree upon a date for

10   coming back for a status conference.  I guess that's all we

11   have to do.  Maybe we need a waiver of speedy trial for Mr.

12   Papagno, so you can talk to him about that, too.

13            So take five minutes, fill out the release form, talk

14   to him about speedy trial, I'll come back, get all this on the

15   record, and then we can set a date.  Today is September the

16   2nd, I can do it on the 17th if that's not too soon for a

17   status, or even though I'm in trial the following week we

18   probably could do it one morning the week of the 22nd, do it

19   the 29th, not the 30th.  So look at your calendars and talk to

20   Ms. Moon about that, and I'll come back as soon as you guys are

21   ready.

22            (Recess taken)

23            THE COURT:  So I see that you have agreed that

24   Mr. Papagno will report weekly by phone to Pretrial Services,

25   and he's supposed to stay away from his wife except for divorce
```

22

1    proceedings and custody transfers.  He's not employed at the
2    moment.  And be back here we've agreed on September 17th at
3    10:00.
4            MR. KELLY:  We're in the process of setting up a
5    meeting at the attorney's office to work on the evaluation
6    issue.  Hopefully we can come back with some way to work it
7    out.
8            THE COURT:  Okay.  Do we need to deal with speedy
9    trial waiver, or do you just want to talk about that when you
10   come back in two weeks?
11           MR. MITZELFELD:  Can we have one second, Your Honor.
12           THE COURT:  Sure.
13           (There was a pause in the proceedings.)
14           MR. MITZELFELD:  Your Honor, we've agreed to address
15   that on the 17th.
16           THE COURT:  Has Mr. Papagno been through normal
17   booking procedures?
18           MR. KELLY:  No, Your Honor.
19           MR. MITZELFELD:  He's not, Your Honor.
20           THE COURT:  So you need to arrange for that as well.
21           MR. MITZELFELD:  The government has prepared a
22   booking order, but it's not clear whether we should wait or
23   should go ahead.
24           THE COURT:  It's up to you.  At some point he's got
25   to be processed.

1          MR. MITZELFELD:  Right.

2          THE COURT:  And I can sign it now or --

3          MR. KELLY:  He was prepared to come back 9:00

4    tomorrow morning.

5          MR. MITZELFELD:  I think it would be good if we

6    proceeded with that.

7          THE COURT:  I'll sign the order, and then if he's

8    prepared to come back 9:00 tomorrow morning, you all can do it

9    at your convenience tomorrow.  It's a little late in the day to

10   try to do it now.

11         MR. MITZELFELD:  We had planned -- proposed that it

12   would be tomorrow, Your Honor.

13         THE COURT:  That's fine.  I left a message for Mr.

14   Mitzelfeld the other day about the appeal waiver provision

15   because of my views on that, and that's the only change, I

16   gather, from the earlier plea papers.

17         Okay, are we all set?

18         MR. KELLY:  Yes.

19         THE COURT:  Mr. Papagno, just stand up a second.

20   First of all, you have to comply with this booking order

21   tomorrow.

22         THE DEFENDANT:  I understand.

23         THE COURT:  Secondly, comply with all the other

24   conditions of the bail form, and Mr. Kelly will go over it with

25   you.  And, finally, you need to be back here September 17th at

```
 1    10:00; do you understand that?

 2              THE DEFENDANT:  Yes.

 3              THE COURT:  Okay, see you then.

 4              MR. KELLY:  Thank you, Your Honor.

 5              MR. MITZELFELD:  Thank you, Your Honor.

 6         (Proceedings concluded.)

 7

 8                         CERTIFICATE

 9              I, LINDA L. RUSSO, Official Court Reporter, certify

10    that the foregoing pages are a correct transcript from the

11    record of proceedings in the above-entitled matter.

12

13

14                         _____

15                         Linda L. Russo, RPR
                           Virginia CCR No: 0313102

16

17

18

19

20

21

22

23

24

25
```